UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____           │
│ DATE FILED: _9/7/2021_____          │
└─────────────────────────────────────┘
```

VICTOR REYES,

                              Plaintiff,

        -against-                                     No. 20-cv-1883 (NSR)
                                                      **OPINION & ORDER**

THE VILLAGE OF SPRING VALLEY,

                              Defendant.

NELSON S. ROMÁN, United States District Judge:

Plaintiff Victor Reyes ("Plaintiff") commenced this action, pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e, *et seq*., ("Title VII"), by the filing of his Complaint on March 1, 2020.  (*See* Complaint ("Compl.") (ECF No. 1).)  Plaintiff asserts that Defendant, the Village of Spring Valley ("Defendant" or the "Village"), his former employer, violated Title VII by terminating him in retaliation for his complaint to it that a nonparty male coworker violated Title VII and sexual harassed—*i.e.*, threatened to anally rape—a female nonparty coworker.  (*See id.*)  Presently before the Court is the motion of Defendant to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).  (ECF No. 15.)  Defendant submitted a memorandum of law in support of its motion.  (Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def's Mem.") (ECF No. 15-3).)  Plaintiff opposed Defendant's motion.  (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl's Opp.") (ECF No. 16-1).)  Finally, Defendant submitted a memorandum in further support of its motion.  (Memorandum of Law in Further Support of Defendant's Motion to Dismiss ("Def's Reply") (ECF No. 17).)  For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

### I.      Factual Allegations

The following facts are derived from the Complaint or matters of which the Court may take judicial notice, are taken as true, and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

Between November 2007 and December 12, 2018, Plaintiff was employed by Defendant and was initially stationed as a court officer in the Spring Valley Justice Court.  (Compl. ¶¶ 7-8.) Subsequently, on or about July 3, 2018, Plaintiff was notified by Anthony Mallia ("Mallia") "an aide to Mayor Alan Simon," that there was a need for increased security in a different village building referred to as the "Village Hall."  (*Id.* ¶ 10.)  Plaintiff and a coworker, Simeon Naemit ("Naemit"), were sometime afterwards assigned to work as security officers at the Village Hall, and Plaintiff worked approximately 21 hours per week in this position.  (*Id.* ¶¶ 13-14.)

Sometime in or around December 2018, an alleged sexual harassment incident occurred between two of Plaintiff's colleagues.  Justin Montgomery ("Mr. Montgomery"), an employee of Defendant assigned to the Village's Section 8 Housing Department, allegedly sexually harassed his colleague, Meagan Izquierdo ("Ms. Izquierdo").  (*Id.* ¶ 16.)  Plaintiff suggests that Mr. Montgomery may have benefited from the protection of his mother, Diana Montgomery ("Ms. Montgomery"), who is also employed by Defendant as the Village Clerk.  (*Id.* ¶ 17.)  The sexual harassment allegedly consisted of Mr. Montgomery's statement to Ms. Izquierdo that her "man ain't shit" and (in what appears to be a loose quotation of Mike Tyson's notorious statement to reporters at a press conference on January 22, 2002) that he "would fuck [Ms. Izquierdo] in the ass until she told him she loved him."  (*Id.* ¶ 19.)

2

Plaintiff came to learn about this alleged sexual harassment during a shift as a security officer at Village Hall on December 7, 2018.  (*Id.* ¶¶ 18-19.)  On that date, Ms. Izquierdo told Plaintiff and Naemit that she was being sexually harassed by Mr. Montgomery and described Mr. Montgomery's threat of forcible adulterous anal sex.  (*Id.*)  After hearing Ms. Izquierdo's account, Naemit (not Plaintiff) reported the sexual harassment complaint to Mayor Simon and Mallia and later discussed the "complaint and what should be done" about the allegations with Plaintiff.  (*Id.* ¶¶ 20-21.)

Later that day, Ms. Izquierdo's father, Nelson Izquierdo ("Mr. Izquierdo"), arrived at Village Hall to see his daughter after hearing about the threat she received from Mr. Montgomery. (*Id.* ¶ 22.)  After Mr. Izquierdo discussed the matter with Plaintiff and Naemit, he requested an audience with Mallia and Mayor Simon.  (*Id.* ¶ 23.)  Plaintiff then went to the Mayor's office and "told Mallia that Ms. Izquierdo was being subjected to sexual harassment by [Mr.] Montgomery and that her father wanted to speak with the Mayor about it."  (*Id.* ¶ 24.)  After Mallia told him that he wanted to speak with Mr. Izquierdo after dealing with another task, Plaintiff "told Mallia [that] it was a serious situation and that he should come out to speak with them [*i.e.*, Mr. Izquierdo and Ms. Izquierdo[1]] immediately" and that "he would call the police if the situation was not addressed."  (*Id.* ¶ 25.)  Mallia then met with Ms. Izquierdo, Mr. Izquierdo, Assistant Village Attorney Anthony Brigandi, and Naemit to discuss the sexual harassment allegation and promised attendees of the meeting (which did not include Plaintiff) that the Village would take the complaint seriously and address the matter by the following Monday.  (*Id.* ¶¶ 26-27.)

---

[1] Though Plaintiff does not directly state that "them" refers to Mr. Izquierdo and Ms. Izquierdo, it can be fairly inferred that he is referring to the father and daughter from his use of a plural pronoun and his subsequent allegation that Mallia met with Ms. Izquierdo and Mr. Izquierdo.  (*See* Compl. ¶¶ 25-26.)

Four days later, on December 12, 2018, Plaintiff reported to work for the first time since his confrontation with Mallia and was summoned to Village Attorney Brigandi's office for a meeting at 9:10 a.m.  (*Id.* ¶¶ 29-30.)  During the meeting, which was attended by Village Attorney Brigandi and Ms. Montgomery, Plaintiff was told by Village Attorney Brigandi that Plaintiff and Naemit were being terminated as security officers in Village Hall, and he was handed a letter from his union president that allegedly contained a pretextual reason for terminating him.  (*Id.* ¶¶ 30-31.)

## LEGAL STANDARD

### I.  Fed. R. Civ. P. 12(b)(6)

On a Fed. R. Civ. P. 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claim(s) "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (noting that a claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged").  While it is not necessary for the complaint to assert "detailed factual

4

allegations," it still must allege "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*

## DISCUSSION

Defendant seeks dismissal of Plaintiff's sole claim on the grounds that Plaintiff failed to articulate one of the elements of a prima facie Title VII retaliation claim – *i.e.*, he asserts that Plaintiff failed to demonstrate that he engaged in a protected activity.  (Def's Mem. at 3-4.) Plaintiff responds that he adequately alleges protected activity in the form of third party reporting of a Title VII violation, *i.e.*, the sexual harassment of a co-worker.  Although this is a close call, as discussed below, the Court agrees with Plaintiff.

## I.     Applicable Law in Third Party Title VII Opposition Clause Claims

Title VII retaliation claims are evaluated under the burden-shifting framework established in *McDonnel Douglas v. Green*, 411 U.S. 792 (1973).  *See Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932-33 (2d Cir. 2010) (per curiam).  As an initial matter, the plaintiff must make a prima facie case:  (1) that she engaged in a protected activity; (2) that the defendant knew she engaged in a protected activity; (3) that the defendant took an adverse employment action against her; and (4) that there was a causal connection between Plaintiff's protected activity and the adverse employment action.  *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  The plaintiff's burden of proof at this stage is de minimis.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000); *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) (describing burden as "minimal").  In evaluating whether a plaintiff has met this burden, the Court "focus[es] only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

Pursuant to the 'opposition clause,' Title VII forbids an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). "The word 'oppose[d],' which is not defined in the statute, has been interpreted, in part, to mean 'adverse to, as in opinion' and does not require any action 'to advance a position beyond disclosing it.'" *Abromavage v. Deutsche Bank Sec. Inc.*, No. 18-CV-6621 (VEC), 2021 WL 1061596, at *3 (S.D.N.Y. Mar. 19, 2021) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, Tenn., 555 U.S. 271, 276, 277 (2009)). "[P]rotected activities are not limited to complaints involving discrimination against the complainant herself, but also extend to complaints of discrimination on behalf of other employees." *Littlejohn*, 795 F.3d at 317.

Communications by third parties concerning discriminatory conduct—*e.g.*, reports made by plaintiffs supporting their co-workers or statements made by plaintiffs solicited by investigators in an internal investigation—have regularly been considered protected activity with some key caveats. On the one hand, communications that are critical of conduct at issue and outside the scope of employment responsibilities are deemed protected activity. Thus, "'[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's opposition to the activity.'" *Crawford*, 555 U.S. at 276 (citing EEOC Compl. Man. §§ 8–II–B(1), (2), p. 614:0003 (Mar.2003)). For example, a plaintiff's statement during an internal investigation that he witnessed the use of racial slurs and that there was a locker room atmosphere with respect to treatment of women was deemed to be an adequate expression of disapproval so as to qualify as protected activity. *Abromavage*, 2021 WL 1061596, at *4; *see also, e.g.*, *Hagan v. City of New York*, 39 F. Supp. 3d 481, 501 (S.D.N.Y. 2014) (concluding that plaintiff plausibly pleaded a

retaliation claim where her "allegations suggest that . . . she advocated for systemic reform and the rights of minority employees and, in so doing, became a thorn in the side of officials who wanted to persist in unlawful discriminatory practices. This is quintessential opposition activity that goes beyond mere participation in her role as an EEO Officer."); *Adams v. Northstar Location Servs.*, LLC, 09-CV-1063, 2010 WL 3911415, at *4 (W.D.N.Y. Oct. 5, 2010) (concluding that plaintiff's assertion to management "that it would be 'inappropriate' to fire certain minority employees" constituted a protected activity, but that plaintiff's "actions in investigating [a] complaint of race-based harassment would not constitute protected activity" because those actions were within the scope of her employment as human resources director); *cf. Cooper v. New York Dep't of Labor*, 14-CV-0717, 2015 WL 5918263, at *6 (N.D.N.Y. Oct. 9, 2015) (explaining that plaintiff alleged facts plausibly suggesting that she "personally complained" of, and was "critical" about, "proposed changes to complaint-handling procedures within state agencies," but that plaintiff failed to allege facts plausibly suggesting that defendants "were engaging in unlawful discrimination through the new complaint-handling procedures").

On the other hand, "[t]o the extent an employee is required as part of her job duties to report or investigate other employees' complaints of discrimination, such reporting or investigating by itself is not a protected activity under § 704(a)'s opposition clause, because merely to convey others' complaints of discrimination is not to oppose practices made unlawful by Title VII." *Littlejohn*, 795 F.3d at 318. Thus, courts have concluded that a third party fails to allege protected activity in connection with their disclosure of an alleged Title VII violation where the complainant does not condemn the at-issue conduct or convey an assessment that discrimination has occurred, or where the disclosure itself was within the scope of the complainant's job responsibilities. *See, e.g.*, *Whethers v. Nassau Health Care Corp.*, 956 F. Supp. 2d 364, 381 (E.D.N.Y. 2013) (finding

that plaintiff's activity of providing a document containing viable discrimination claims "is clearly within the plaintiff's duties as a representative of the Office of Diversity to present cases of discrimination to upper management and does not constitute a protected activity.").

Though not relevant to resolution of the instant motion—as Defendant solely argues that Plaintiff failed to articulate a prima facie Title VII claim—once a plaintiff has made a prima facie case, the burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Upon the defendant's proffer of a non-discriminatory reason, the presumption of discrimination arising with the prima facie case "drops from the picture," *Weinstock*, 224 F.3d at 42 (citing *Hicks*, 509 U.S. at 510-11), and the "final and ultimate burden" then returns to the plaintiff to demonstrate that "defendant's reason is in fact [a] pretext for unlawful discrimination," *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015); *accord McDonnell Douglas*, 411 U.S. at 804; *Weinstock*, 224 F.3d at 42. The plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not the discrimination was the real reason for the employment action." *Weinstock*, 224 F.3d at 42 (internal quotation marks omitted) (citation omitted).

## II.        Application of Title VII Third Party Opposition Clause Principles to Instant Case

In its moving brief, Defendant argues that Plaintiff cannot make out a prima facie case that he engaged in protected activity because reporting egregious conduct directed at another person does not qualify as protected activity. (Def's Mem. at 4.) Plaintiff persuasively responded that reporting conduct can be protected activity and is adequately alleged here because Plaintiff did not merely pass along an allegation but also conveyed his condemnation of the alleged activity and his conclusion that sexual harassment has occurred. (Pl's Opp. at 3-7.) In its reply papers, Defendant

principally argues that Plaintiff's claim fails because, even if he spoke to his employer, he did not engage in protected activity insofar as he failed to file a formal complaint.  (Def's Reply at 4-5.)

Though it is a close call, the Court concludes that Plaintiff has sufficiently alleged protected activity.  In relevant part, Plaintiff has alleged that he went to Mallia and told him "that Ms. Izquierdo was being subjected to sexual harassment by Montgomery."  (Compl. ¶ 24.)  He also advised Mallia that "it was a serious situation and he should come speak with them [*i.e.*, Mr. Izquierdo and Ms. Izquierdo] immediately" and that "he would call the police if the situation was not addressed."  (*Id.* ¶ 25.)  Though these allegations are relatively thin, Plaintiff's claim that he told Mallia that a coworker was subjected to harassment by another coworker sufficiently states that Plaintiff "communicate[d] to h[is] employer a belief that the employer has engaged in . . . a form of employment discrimination," *Crawford*, 555 U.S. at 276, and accordingly it is sufficient to plausibly support the prima facie requirement of a protected activity at this stage of the litigation. Likewise, Plaintiff's threat to call the police unless Mallia spoke with the alleged victim and her father suggests that he was "critical of the conduct at issue."  *Abromavage*, 2021 WL 1061596, at *4.  Finally, contrary to Defendant's suggestion, the Court notes that the informality of Plaintiff's communication is not a basis to conclude that Plaintiff failed to plausibly support the prima facie requirement of a protected activity.  *See Lamberson v. Six West Retail Acquisition Inc.*, 122 F.Supp. 2d 502, 511 (S.D.N.Y. 2000) ("Protected oppositional activities include informal as well as formal complaints and complaints to management").

A number of Defendant's arguments are wildly inappropriate at this stage insofar as they are predicated upon decisions reached on summary judgment motions and attempts to mischaracterize or contradict the facts alleged in the Complaint.  For example, after discovery, Defendant may ultimately be able to prove that the interaction between Plaintiff and Mallia

consisted of Plaintiff attempting to manage a reception issue—*i.e.*, the appearance of a frustrated visitor at Village Hall—within his job responsibilities and that Plaintiff was not earnestly conveying his belief that sexual harassment had occurred.  Nonetheless, Plaintiff did not plead that he was merely acting as a receptionist (as Defendant suggests in its motion) and, at this stage of the litigation, Plaintiff's allegations are sufficient to give de minimis plausible support to the prima facie requirement that he engaged in protected activity.  Likewise, Defendant may be able to persuasively argue at a later stage of this litigation that Plaintiff could not have reasonably formed a conclusion that discriminatory activity occurred considering that, among other things, "Plaintiff did not witness the alleged harassment" or "provide evidence about the harassment."  (Def's Mem. at 4.)  It is true that, with respect to an opposition clause claim, "a cause of action is stated so long as plaintiff possessed a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'"  *Kunzler v. Canon, USA, Inc.*, 257 F.Supp.2d 574, 579 (E.D.N.Y.2003) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  Nonetheless, the Court disagrees with Defendant's suggestion that a third party complainant must personally witness sexual harassment in order to form a good faith and reasonable belief that a violation of Title VII occurred.  Finally, Defendant may prevail on its argument that Plaintiff did not engage in protected activity because Mallia is not his employer and is only loosely affiliated with Plaintiff's employer.  Nonetheless, at this stage, the Court cannot conclude that Mallia did not qualify as Plaintiff's employer or manager, especially given that Plaintiff alleges that Mallia was involved in hiring him, played a leading role in the investigation of the sexual harassment incident, and made representations to the victim regarding the Village's position on the seriousness of sexual harassment and even set the timeline for resolving the complaint.  (Compl. ¶¶ 10, 20-21, 26-27.)

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is DENIED.  Defendant is directed to file an Answer to the Complaint on or before September 29, 2021.  The parties are directed to file a Case Management Plan and Scheduling Order on or before October 13, 2021 (template attached).  The Clerk of the Court is respectfully directed to terminate Defendant's Motion to Dismiss at ECF No. 15.

Dated: September 7, 2021                                      SO ORDERED:
      White Plains, New York

                                                _____
                                                 NELSON S. ROMÁN
                                     United States District Judge

UNITED STATES DISTRICT COURT                    Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

                                                **CIVIL CASE DISCOVERY PLAN**
                            Plaintiff(s),       **AND SCHEDULING ORDER**

            - against -


                            Defendant(s).       _____ CV _____ (NSR)
------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

    1.      All parties [consent] [do not consent] to conducting all further proceedings before
            a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
            The parties are free to withhold consent without adverse substantive consequences.
            (If all parties consent, the remaining paragraphs of this form need not be
            completed.)

    2.      This case [is] [is not] to be tried to a jury.

    3.      Joinder of additional parties must be accomplished by
            _____.

    4.      Amended pleadings may be filed until _____.

    5.      Interrogatories shall be served no later than _____, and responses
            thereto shall be served within thirty (30) days thereafter.  The provisions of Local
            Civil Rule 33.3 [shall] [shall not] apply to this case.

    6.      First request for production of documents, if any, shall be served no later than
            _____.

    7.      Non-expert depositions shall be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions shall not
                be held until all parties have responded to any first requests for production
                of documents.

        b.      Depositions shall proceed concurrently.

        c.      Whenever possible, unless counsel agree otherwise or the Court so orders,
                non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.     Any motions shall be filed in accordance with the Court's Individual Practices.

16.     This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.     The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)


       SO ORDERED.

Dated:  White Plains, New York
        _____

                                                    _____
                                                    Nelson S. Román, U.S. District Judge